The next case on our call this morning is Agenda Number 7, Case Number 104-470, People of the State of Illinois v. William A. Hudson. Mr. Wilson, are you ready to proceed? Mr. Chief Justice, and may it please the Court, Counsel. Good morning, Your Honors. My name is Ryan Wilson. I'm an attorney with the Illinois Office of State Appellate Defender for the defendant appellant, William Hudson. The home invasion statute requires that the State prove that a defendant intentionally caused any injury to a person within a dwelling place before a conviction can follow. At issue in this appeal is whether a psychological injury can meet the any injury requirement of the home invasion statute. Based on the legislative history of the statute, as well as the case precedent that requires a physical injury to meet the showing of any injury, William Hudson would ask this Court to find that only a physical injury, and not a psychological injury, constitutes the predicate injury for a home invasion conviction. Why should the Court focus on the psychological injury aspect when the victim, her mother, responding officer, all testified as physical injuries to the victim, her head, face, finger, and shoulder? There's a couple reasons, Your Honor. There were conflicting accounts of what actually happened in the house with the encounter between the defendant and Ms. Walker. So it comes down to a credibility determination that we don't... The conflict was where? Pardon? The conflict was where? You said conflicting evidence? Right. It's conflicting evidence. The victim testified that the defendant entered the home and physically assaulted her in the kitchen. A little factual background might be helpful in the case, if I may. This involved a case where the defendant was admittedly very intoxicated and high on cocaine. He had solicited a prostitute to perform a sex act in a dog house in Quincy, Illinois. The prostitute removed his pants, took his money from those pants, and ran. Mr. Hudson, not knowing where the prostitute went, but believing she went into a residence, followed her into the residence that he believed she had fled. His account of what happened was he was running through the house chasing the prostitute when the lights came on and he encountered Ms. Walker. According to the... Does he dispute the physical injuries that I've just listed? He disputes the finger injury that Ms. Walker... Let me go back for a minute. He disputes that the injuries were intentionally caused. If the jury, in fact, believed Ms. Walker regarding the evidence of the physical injuries, then those are uncontradicted. What ends up being contradicted in this case is whether those injuries were intentionally caused or not. Under the statute, I would argue that the injuries are required to be intentionally caused, both under the statute and the legislative history referencing the statute. How in the finding of the jury did it distinguish, if at all, between physical and psychological injuries? It did not. The jury issued a general verdict. Then following up on Justice Freeman's question, do we necessarily have to reach the issue of psychological injury in this case because there was physical injury and the jury heard the case and made a decision? Yes, you do have to remand it back down. The reason for that is we don't know that the jury even broached the topic of whether there was sufficient injury in this case. Well, I mean, that frequently happens with the general verdict. Excuse me, I'm sorry. That frequently happens with the general verdict when there's two bases that could be the basis of the guilt. But the defendant in this case is arguing that one of those is invalid, and so it's very possible that the jury just considered the invalid basis of guilt and kind of took the path of least resistance based on the emotional testimony that was presented at trial. You're basing that on the jury instruction, right? That's correct. And the jury instruction talked about both physical and emotional injury. That's correct. Going back to Justice Freeman and then Justice Fitzgerald, if indeed there's physical injury in the record, does that matter? I mean, if there was enough evidence of physical injury in the record to sustain a verdict just based on physical injury alone, what difference does it make that the jury instruction talked about emotional injury? It matters in that we don't know if the jury actually considered the evidence of physical harm. It's possible that they just may have heard the testimony about the emotional injury and thought, hey, we don't have to resolve a credibility conflict here between the defendant's version of events and Ms. Walker's version of events. It's possible that they just said, you know, we heard the testimony about how the girl was upset when it happened and that she has not been sleeping very well, and based on that, let's just convict him. There's no showing that they even reached the issue of physical harm. Did the defendant object to the instruction on injury? No, the defendant did not. Did he raise this in post-trial motion? No, the defendant did not. Isn't there a substantial issue then of waiver? I don't believe that there is an issue of waiver because it amounts to plain error in this case. It's very possible that there is a due process violation if indeed psychological injury was not contemplated by the statute and that was the basis with which he was convicted. Then the defendant would be convicted upon a grounds not contemplated by the statute and not made illegal by the statute. So the possibility of him being convicted for something that's not prohibited by law is a due process violation, and we will not know whether there is indeed a due process violation until we remand it to the trial court and order that he be retried only with jury instructions regarding the physical aspect of the injury. Well, just on the injury itself, the emotional harm versus physical injury, and probably why we took this case because different appellate courts have gone different ways on that very issue, right? Yes, sir. How do you address what I believe is at least a portion of the state's argument that there's other statutory provisions that talk about bodily harm when they mean only physical injury, and in this particular case they just say physical injury? I believe the state was... Or just, I'm sorry, any injury. I believe the state, and I have several responses, I guess, to that. I believe the state was referencing a point that was raised in the initial brief in this case where we pointed out that because the home invasion statute is under the bodily harm section, that means that there has to be physical injury. I think it's very telling that the home invasion statute is a Class X felony designation. Normally Class X felonies, as set forth in the reply brief, are only the most pervasive of physical harms, and therefore I don't think it's... I don't think it follows, I don't think the state's argument follows that because there are other harms that don't encompass physical harm, and I think they were talking about the insulting and provoking of the battery statute. I believe that's what you're referencing. Just because in the bodily harm section the battery statute allows for insulting and provoking harm, I don't think means that the legislature intended for both psychological harm and physical harm to qualify as the predicate any injury in the home invasion statute. Even if we were to disagree with you on that point... Yes. ...and could find psychological harm as a predicate for home invasion, isn't it also your position that the evidence in this case is not sufficient to establish psychological harm? That's correct. And lacks expert testimony? That's correct. You may want to touch on that as well. The reason for that position is, and a lot of what is, especially in the reply brief, comes from the legislative history that has been included in, appended to the reply brief. The common theme running throughout the legislative history was that the legislature was trying to prohibit any physical harm, no matter how minor, and indeed the 3rd District recently in People v. Woods overruled an earlier case regarding a home invasion in People v. Bintner to hold that even physical pain constitutes an injury for the home invasion statute. I think that's the intent of the legislature, is that there has to be some physical manifestation of the pain. In this case, however, if the court disagrees with that, I don't believe the legislature was trying to legislate an offense, this being the home invasion, and punish that with a Class X felony because someone was merely scared. I think there has to be some sort of standard where an expert witness testifies that there was actually an injury suffered here, some sort of emotional injury. And I would distinguish this case from the 4th District's case in People v. Eric, which is the one case to hold that psychological injury is permissible under the home invasion statute. In that case, there was actually a 7-year-old girl who a home invader, he covered her mouth. The girl suffered from sleeplessness, and I believe they said had some depression and some anxiety. There was actually a psychiatrist or sociologist that interviewed her in that case and explicitly testified not only that she had suffered, I believe it was an acute post-traumatic stress disorder, but also that that was a result of the physical contact that she had had with the defendant. And in this case, there's absolutely no showing that beyond being scared, as I would argue any of us would be if we were involved in a home invasion, that Ms. Walker had any sort of psychological injury, as I would argue would be required under the statute if this court found that a psychological injury was included. So really we would have to decide whether we think this is the type of injury that is beyond the can of the average juror and requires expert testimony? Because there was testimony from both the victim and her mother that there was an emotional injury. That's correct. That's correct. And I would argue, yes, that there has to be something beyond the testimony of a mom and the girl. I believe that the Fourth District in Erick is persuasive of that point. There was actually a psychiatrist or sociologist there that affirmed the fact that the girl had suffered an emotional injury. Based on the testimony in this case, we don't know if Ms. Walker was just scared, and that's why she was suffering from the things she was. Is there testimony in the record, Mr. Wilson, that describes some of the symptoms of trauma? Of the physical injury? Well, of the emotional injury by either the mother or the victim, recognizable emotional trauma. Testified that the girl, Ms. Walker, was scared to go in her kitchen when it was dark, that she had difficulty sleeping at night, and I believe that she isolated herself occasionally in her bedroom. So it really does come down to whether that type of injury, and your position would be you need expert testimony to say that's some type of condition, and I believe the state's going to probably argue that it is not above the can of the average juror and that emotional injury is easily recognizable by the jury. Right. Okay. The home invasion statute uses the term any injury, and the statute does not refer to psychological injury. Because Illinois appellate courts have defined the any injury requirement different, it's safe to say that that language is ambiguous. Number one, that means that it needs to be construed in favor of the defendant, and number two, we can look at the legislative history to try and determine what the legislature was intending by using that language. While debating the home invasion statute, the legislature spoke in terms of hypothetical situations. The home invasion statute was passed, I believe, approximately a year after the Class X felony designation was passed. So the legislature was curious how a home invasion and the elements of a home invasion fit into what they had legislated involving the Class X designation. During that discussion, they used terms such as attacks, pummels, and physically destroys, terms that generally mean some sort of ominous physical injury. Further, as I said earlier, the Class X felony designation has traditionally been left to only injuries that have a physical manifestation and not an emotional manifestation, and that's set forth in the defendant's reply brief. Further, during the debates, there were several Illinois senators who voiced their opinion that home invasion should not be a Class X felony, absent some showing that an injury was caused by the use of a deadly weapon. Now, I think that's persuasive to show that they weren't intending for emotional injury, that there had to be some sort of physical manifestation. While that didn't end up in the statute, I think it is persuasive. The statement's brief argues that the legislature's use of the word any evidences in the legislature's intent to mean just that, any sort of injury, whether it's physical, psychological, emotional, or otherwise. This is consistent with the Fourth District's reasoning, but the Fourth District conflicts with the legislative history that shows that the legislature was not contemplating a psychological injury. A psychological is not even mentioned in the legislative debates, with the exception of one mention. I believe someone says, we all know the psychological effect that a home invasion has on a neighborhood. Absent that reference, there's absolutely no indication that they even contemplated psychological, emotional, or any other sort of emotional injury. You base your argument that it's ambiguous on the fact that it's not defined in the statute? Based on the fact that there have been multiple appellate courts that don't even know what the term any injury means, or are unable to define the term any injury because it wasn't further defined in the statute, yes. The jury in this case issued a general verdict  that it's very possible that they, after hearing evidence regarding the psychological injury, decided that that was the path of least resistance and didn't even consider evidence of an intentional physical injury. We have no way of knowing whether they did determine that there was proof of an intentionally caused physical injury, the extent of the injury, or that the defendant intentionally did it, that it was something, the testimony conflicts between what the defendant stated happened and what the victim stated happened. The state argues that any error was harmless because the jury found that there was evidence of physical harm. But there still remains a question of credibility between the defendant and the victim, that being what actually happened in the kitchen that day. And that's a determination that this court has traditionally left to the finder of fact. And that's why we are arguing that it should be remanded down to the trial level for a new trial. Of course, the appellate court in this case did say there was sufficient physical, or evidence of physical injury to uphold the conviction, even if the psychological injury was not sufficient. Correct. The appellate court said that they believed that a jury would be inclined to believe the victim's statement. They didn't give any indication of why they thought that was or that they thought that the defendant was less credible than the victim was. So I don't know why they made that determination. But that is correct. Are there any further questions from the bench? There being none, thank you, Mr. Wilson.  Ms. O'Connell. May it please the Court, my name is Erin O'Connell, an assistant attorney general, and I'm here on behalf of the people of the state of Illinois. The issue that's presented in this case is much narrower than the defendant has suggested. The defendant suggests that there remains a credibility determination to be made on remand. However, that is simply not the case. The jury in this case was instructed that it should either find that the defendant intentionally caused a psychological injury, or it should find that the defendant intentionally caused a physical injury. The jury resolved the credibility issue in the record and held that the defendant intentionally caused whatever injury it found that the defendant suffered. So therefore, it's just not open to question as to which of the two versions of events the jury rested its verdict on. The two versions of the events were directly contradictory. The victim in this case testified that the defendant, when he entered her house, saw her across the room, saw her terrified, and at that point, came across the room, grabbed her shoulder so roughly that it left an abrasion, and then grabbed a hold of her hair and tried to pull her out the door by her hair. The defendant, in this case, gave three versions of the events, two of which contradict the victim's testimony. First, I'd just like to emphasize that in his initial statement to the police, he gave a version that was exactly what the victim's testimony was and admitted that he had, in fact, tried to drag her outside of her kitchen. However, the defendant subsequently gave two more self-serving versions of events. The first was a week after he had given his original statement, when he volunteered to speak again with police detectives. And at that time, he explained that when he saw the victim and he saw that she was terrified, he went up to her to comfort her, accidentally injuring her shoulder and pulling her hair. At trial, he gave another story in which he said, well, actually, when I went into the house, the victim and I were coming at each other. I raised my arm to prevent us from colliding, and accidentally, at that point, I injured her shoulder and pulled her hair. The jury in this case necessarily rested its verdict because it adopted the victim's version of events and the version that the defendant initially told police detectives. So the only issue to be resolved in this case is whether the verdict in this case can stand if the injury that the jury found that the defendant suffered was psychological trauma resulting from physical contact as opposed to physical injury. The elements of intentionality and causality are simply not up for debate at this point. In this case, the defendant has suggested that in the case that it was a verdict resting on psychological trauma, that he is entitled to a reversal of his conviction. The defendant is incorrect and has made some misstatements of the law in his reply brief. And I'd like to clarify the legal framework that this claim should be assessed under, and I apologize that it is fairly complicated, but it's important to set forth the distinctions in the four cases on which the defendant relies on pages 10 and 11 of his reply brief. There are four cases that the defendant cites Stromberg, Yates, Griffin v. United States and Peeple v. Griffin. Defendant suggests that these cases all stand for one principle, that whenever there's an error in one of two possibilities presented to a jury, that the defendant just obtains a reversal. However, in those four cases, it's a much more nuanced doctrinal framework. And the key case in this is Griffin v. United States, which is the most recent Supreme Court case to discuss the issue. In Griffin, the Supreme Court explains its previous holdings in Stromberg and Yates. It says that in Stromberg, it was concerned with a verdict where one of two alternative theories presented to the jury was found to be unconstitutional. It held that in that case where it's not possible to tell if the verdict rested on unconstitutional ground, then the verdict cannot stand. That doctrine simply is not applicable here because the defendant is not suggesting that there was any unconstitutionality to the theories presented to the jury. The court in Griffin v. United States then went on to explain its holding in Yates. It expressed some disapproval of the broad holding that Yates suggests, but it clarified that what that case was concerned about is when two theories are presented to the jury and one of them is found to be legally insufficient, a misstatement of a statutory principle, then in some instances there is a need for a reversal of the conviction. However, there are limitations to that rule that I'm going to come back to in a second. Griffin then dealt with a situation in which the two alternatives that were presented to the jury were both legally sufficient. However, the facts presented to the jury could not support a verdict on one of the two theories that was presented. Griffin made absolutely clear that in that case the conviction must stand if one of the two theories is supported by the facts of the case. That means that if the defendant is correct that the people failed to present sufficient evidence of psychological trauma, his verdict nevertheless must stand because there is clear abundant evidence of a physical injury in this case. Now I want to come back to what are the limitations on the Yates principle, and these are set forth in Peeple v. Griffin, an Illinois case. In that case, the court held that the Yates principle is limited by the harmless error doctrine. This means that even where one of the two alternatives presented to the jury is legally insufficient, the defendant cannot obtain a reversal of his conviction if the error in the instructions was harmless. Again, this is resolved by the fact that the evidence in the record of physical injury was sufficient beyond a reasonable doubt to establish that the defendant injured the victim. And again, as I've discussed, there is just no dispute as to what injuries the defendant caused. He himself agreed at trial that he grabbed the victim's shoulder. There was testimony that this was such a rough grabbing that it left an abrasion on her shoulder. He also does not dispute that he grabbed the victim's hair. He does dispute that he then attempted to drag her outside the kitchen by her hair, but he doesn't dispute that he did harm her through doing that, and the victim testified that she experienced significant pain and throbbing from that contact with the defendant. And then finally, the jury was presented with evidence that the victim suffered from a finger injury. The victim explained this injury by she had to grab a hold of the door frame as the defendant was trying to drag her out of the kitchen by her hair, and when she did that, she jammed her pinky finger, and there was a supporting testimony from the mother that the pinky was swollen. The defendant's version of events did not explain how this injury could have come about, but he also could not explain why the victim would have ended up with a finger injury given the contact that he had with the victim. So in this case, even if the defendant were to prevail under either of the arguments that he's presented, the legal argument that the statute does not encompass psychological harm or that the evidence was not sufficient to establish psychological trauma, the defendant is simply not entitled to a reversal of his conviction. However, I'd like to circle back because, in fact, there was no error here under either of those two theories. First, I'd like to address the simpler issue of whether the evidence was sufficient to establish psychological injury. The court has indicated that the issue here is simply whether it is within the province of a lay jury to comprehend that symptoms such as lasting anxiety and isolating in a bedroom and sleeplessness, which follow upon a young girl's encountering of a man in her kitchen wearing nothing but his shirt who proceeds to try to drag her outside of the kitchen, whether the jury can render its own determination that that constitutes psychological trauma. In this case, the evidence is so clear and the inference is so simple that it was within the province of a lay jury. Now, there may be more complicated cases where expert testimony might be required. However, in this case, it was not necessary for an expert to come confirm what every person already knows, which is that this is a very traumatic experience for a young girl. In addition, the defendant cannot prevail on his argument that the statute does not encompass psychological injury. First of all, the language of the statute itself is not at all ambiguous. The language of the statute encompasses any injury to a person. That clearly encompasses more than just physical injury, and as Your Honor suggested during opposing counsel's argument, the legislature knows perfectly well how to refer to physical injury by itself. It's used language in other provisions of the code that require bodily harm or physical injury. It chose not to do so here. It chose to employ the language any injury intending to encompass as much as possible. This would encompass clearly psychological injury because that would be an injury to a person. Furthermore, in the legislative history, there is ample support for the proposition that the legislature intended when it passed the home invasion statute and assigned it a class 6 designation. It was not seeking only to punish physical injuries of a type that might be covered by other provisions of the criminal code. It was also concerned with the intangible harms that come when someone invades a person's private sanctuary and permanently, as indicated by the facts of this case, somewhat permanently impairs a person's ability to ever feel secure in their own home. And I will cite to certain provisions of the legislative history that do lend some support to this position. Opposing counsel himself called the court's attention to one, which is on page A3 of the next year's reply brief, the comments of Getty in which he states, There is a second effect, a psychological effect to an entire neighborhood. We have come to presume that our homes are castles and immediately upon home invasion occurring in the neighborhood, no one can feel safe in that community. The entire concept of a man's castle being his home is violated. Clearly that refers to the type of psychological trauma that occurred to the young victim in this case. There was other support that this was on the minds of other legislators. On page 832, comments of Lemke, he indicates that if somebody invades my house or anybody's house, I think the crime should be a very serious crime because that's our house and this is our place of living. He again is concerned not only with physical injury here, he is concerned with intangible harms. And finally on page 837, comments of Sangmeister, For a long time there's been the old saying that a man's castle is his home. It should be at least a class X felony. If we can't be safe in our homes, where else can we be safe? There was debate in the legislature about the severity of the crime that they were designating. There were legislators who expressed some concern that this was a class X designation. However, the debate makes clear that the majority of the legislators believe that this deserved a class X designation because of those psychological harms that are entailed by the crime of home invasion. So therefore, the defendant is not correct that there is no reference whatsoever to psychological injury in the legislative history. Furthermore, it bears noting that the legislature never debated the precise issue of whether psychological injury should be encompassed. All of the quotes that the defendant has taken referring to attacks and to physical injury were given in other contexts where the legislators were just using this as a shorthand, as a potential application of the statute. However, the legislator never at any point expressed its position on whether psychological injury should be encompassed. And finally, I'd also like to note that in this case, as the people have argued in their brief, the statutory language is very broad. However, the precise issue before the court is not how that statutory language should apply in all circumstances. It is whether it is a correct statement that the statute encompasses psychological trauma that results from physical contact. The opposing counsel was up here and he said that it's not enough that someone be simply scared. However, that was not what was presented to the jury in this case. The jury was asked to find psychological trauma. And furthermore, it was instructed that it had to find that this was an injury that the defendant intentionally caused. All of this alleviates any concerns that the psychological injury here was anything but serious. And the evidence in this case presented that the victim's psychological trauma was in fact very substantial. Thank you, Ms. O'Connell. Thank you. Rebuttal, Mr. Wilson. I just wanted to take an opportunity to clear up the factual circumstances of this case. The defendant did not testify that he intentionally did anything in Ms. Walker's house. What the defendant testified to was that he was in the process of chasing the prostitute, ran into Ms. Walker's house. She turned the lights on when she heard some commotion in the kitchen and they collided. In an attempt to avoid a collision, Mr. Hudson stuck his hand out. His hand accidentally hit her shoulder, according to the defendant, and got caught in her long hair that was draped over her shoulder. And it's uncontradicted that he asked Ms. Walker for help. He then, when Ms. Walker was screaming and was not responsive to him asking for help, turned to leave the residence and his hand was caught in her hair. He admitted during his testimony that he pulled her hair at that point, but that that contact was incidental. As I said earlier, it remains a question of credibility on whether or not the injury, the physical injury in this case, was intentionally caused. It's very possible that she could have suffered the shoulder abrasion, the pulled hair, and the jammed pinky finger during the collision that took place in the kitchen under the defendant's set of facts. And that's why it's important for a jury to determine that issue, to figure out who is more credible after looking at them and observing their testimony. The state also mentioned the defendant's statement that he tried to pull Ms. Walker out of the house. At trial, he denied making that statement to police. So that is not his trial testimony. An officer prior to trial, during trial, stated that is what he informed the officer of. That is not the defendant's testimony. Regarding the state's claim regarding Griffin and Yates and their misapplication in this case, the defendant was never arguing that there is a constitutional question as to whether or not it's constitutional for a psychological injury to constitute the predicate injury of a home invasion. What the defendant was arguing was using those cases as persuasive proof that when you have a general verdict return, when there are alternative verdicts of guilt, one of which is invalid, there's a question of which one of the elements of guilt did the jury return the verdict on, the valid one or the invalid one. As I said earlier, there remains a question of due process. It's very possible that the jury convicted the defendant of a ground that was not permitted by the statute, which is a psychological injury. And until that's remanded to the trial level, we have no way of knowing what grounds the jury convicted the defendant of. And so those cases were not used to say, I believe that there's a constitutional issue here. It was used to say, when you have two alternative theories of guilt and one's invalid, we need some way to determine that the jury rendered their verdict based on the valid theory of guilt and not the invalid one. Additionally, the state referenced several statements made in the legislative history of the statute. And I just want to clarify those as well. Again, there's no indication in the legislative history that anyone ever contemplated a psychological, emotional, or any other sort of injury other than physical injury. The state itself points out Mr. Lemke's statement. He goes on to say that a Class X felony makes it harsher on a criminal who invades a house and commits an armed attack or battery on someone within their home. So even in that statement, he's referencing some sort of physical altercation and not one where there's a psychological injury. Additionally, as I said earlier, there's absolutely nothing in the legislative history to state that the legislature was trying to prohibit any sort of injury if this court finds that psychological injury satisfies the statute other than just that, a psychological injury. The reason that it was important to have expert testimony in this case is no one asked Ms. Walker, are you afraid to go in your kitchen because you saw a scary movie and something happened in the kitchen? They never asked her, are you isolating yourself in your bedroom because you just broke up with your boyfriend and you're upset about that? There was no question like that asked to her. So we have absolutely no idea if it was the defendant's contact with her. And it has to be the contact. It just can't be seeing him standing there. The psychological injury has to be a result of physical contact. There's absolutely no evidence on the record that her injury or alleged injury is due to her contact with the defendant as opposed to just seeing him there or her being afraid for some other ground or on some other ground. When you argue that the psychological injury has to be a result of physical contact, is the basis for that the instruction or Eric? That is the instruction. I would argue that the instruction finds its support in Eric. The instruction defining the any injury claim or the instruction allowing for a finding of psychological injury to satisfy the any injury claim was placed in the IPI instructions after Eric. It was not in previous editions. So it can be thought that Eric was the case that stemmed that change to the jury instruction. And the factual, the facts in Eric were that there was physical contact? The facts in Eric were that there was, well, both there was physical contact that the girl in that case had suffered a psychological injury and there was expert testimony saying that it was a psychological injury and it was because of the physical contact. That is completely void from this case. I would also note that while there are several references throughout the legislative history to a man's home being its castle, those are frequently followed with a statement such as and we should be safe from physical harm in our own home. That statement is kind of a broad statement endorsing the fact that there needs to be protection for physical harm and not just one that, as the state would like it to be, one that was very broad that encompassed any sort of emotional or psychological injury that a homeowner would suffer. If we get to the issue of psychological harm or trauma, under the statute, could this court find that the element of physical contact is unnecessary? I guess I'm not following. Are you asking me whether you could say that there was physical contact and therefore I'm saying is physical contact a necessary element for a trier of fact to find psychological trauma? That would be up to this court's determination. There's nothing in Eric saying that you can or cannot do that. I would also point out that I don't disagree for the most part with Eric's reasoning and that's the Fourth District case that held that a home invasion includes a psychological injury. I disagree with their conclusion. I think their analysis is correct. The Eric court said, well, look, the legislature used the term any injury here. Why did they do that? And they, I believe they referenced the legislative history. There's nothing saying that they went and read it, but they said we believe it was the legislative intent to prevent any sort of psychological injury in this case. And while I disagree with that, I think the proper analysis is to ask why the legislature used the term any injury, and I think that's simply because they wanted to prevent any physical harm, no matter how minor. That could even be the sensation of pain is what the Third District recently held in People v. Woods. Are there any further questions? Apparently not. Thank you, Mr. Wilson. Thank you, Ms. O'Connell. Case number 104-470, People of the State of Illinois v. William A. Hudson is taken under advisement as agenda number seven.